FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

2023 APR 12   AM II: 27

JERRY L. HOFFMAN JR.
   *Plaintiffs,*

                                              First Amended
**v.**                                        **No.** 2:23-cv-00130-SPC-NPM

JOSE DELGADO,
CITY OF PUNTA GORDA
   *Defendants,*

_____

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **JERRY L. HOFFMAN JR.,** by Pro Se litigation, sues Defendants, **CITY OF**

**PUNTA GORDA FLORIDA,** in its official capacity, and **JOSE DELGADO,** a

Detective employed by the City of Punta Gorda, in his official capacity and in

his individual capacity, and hereby alleges as follows. This amended complaint

is filed as a matter of right pursuant to the Federal Rules of Civil Procedures.

## **INTRODUCTION**

1.  This is an action for violation of Plaintiff's rights under the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution, to enjoy freedom of speech, to be secure in person and possessions, to be free from cruel and unusual punishment and excessive force. Plaintiff seeks damages as well as any fees and costs associated with this action.

2.  This action is brought by Plaintiff, a citizen of the United States, who was the victim of retaliatory arrest, with cruel and unusual punishment, willful and purposeful unreasonable seizure his of person, without probable cause, justification or excuse and interference with and denial of Plaintiff's right to free speech by denial of and interference with Plaintiff's right to gather information about public officials in a form readily disseminated to others so as to promote free discussion of government affairs and which was made and done for malicious purposes only.

## **JURISDICTION AND VENUE**

3. This action arises under 42 U.S.C. $^{ss}$ 1983 & $^{ss}$1988. Jurisdiction is founded on 28 U.S.C. $^{ss}$1331 & $^{ss}$1343.

4. All incidents material to this action occurred in Charlotte County, Florida and the Defendants "reside" in Charlotte County. Venue is therefore proper in the Fort Myers Division of the Middle District of Florida pursuant to 28 U.S.C. §§1319(b), and Local Rule 1.04(a).

## PARTIES

5. Plaintiff, Jerry L. Hoffman Jr., is an adult citizen of the United States and is currently a resident of Williston, Levy County, Florida, and was a resident of Levy County, Florida, during all relevant times of this action.

6. Defendant, City of Punta Gorda ( hereafter "City"), is an incorporated municipality of the State of Florida, and at all times relevant did, and still does, operate the City of Punta Gorda Police Department as a department of said municipality, and said City employs all police officers who work for its City of Punta Gorda Police Department.

7. At all times relevant, Defendant, Jose Delgado, was employed by the City of Punta Gorda in its City of Punta Gorda Police Department as Police Officer and was at all times applicable holding the rank of Detective and was at all times relevant, a supervisor in the City of Punta Gorda Police Department.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

8.  On 28 July 2022, at or around 2:00pm, Plaintiff and three other photojournalists entered the City of Punt Gorda Police Department (hereafter, "City Police Department") to question why no FOIA request had been responded to and to obtain complaint forms.

9.  Plaintiff planned to exercise Plaintiff's First Amendment Right of freedom of speech in the form of audio/video recording the interaction with the City Police Department, which is a well-established form by the Supreme Court, of freedom of speech.

10.  Plaintiff was recording upon entering the public facility lobby and went to the public's window for service and requested service.

11.  Very shortly after the officer behind the window was aware Plaintiff was recording, the City Police Department officer left the window without returning, denying service.

12.  Five minutes after the denial of service, three officers, wearing body worn cameras (hereafter BWC) and recording, entered the public lobby of the City Police Department and started interacting with Plaintiff and the others with Plaintiff.

13.  The three Officers were Watch Commander Jimenez, Officer Miller, and Officer Burga.

14.  Watch Commander Jimenez greeted the group, and Plaintiff requested a complaint form and was asked by Watch Commander Jimenez if Plaintiff was recording and if so, then please step outside the public lobby due to City ordinance, Chapter 15, Section 15-48(d)-(e), making it illegal to video record inside any City controlled facility.

15.  Plaintiff, knowing Davis v. Wechsler 236 U.S. 22at 24, The assertion of Federal Rights, when plainly and reasonably made, is not to be defeated under the name of local practices, immediately informed Watch Commander Jimenez that he would be violating plaintiff's Constitutional rights by enforcing the request.

16.  Watch Commander Jimenez again asked, "Would you please step outside." due to Plaintiff recording.

17.  Plaintiff, knowing this to be a request, asked what would occur if the request was denied by Plaintiff.

18.  Plaintiff being threatened with trespass without due process by Watch Commander Jimenez, and Plaintiff having violated no laws outside or

inside the public government facility and knowing a law must be violated by Plaintiff, or a disturbance created by Plaintiff, to be trespassed from a public government facility, turned to question Officer Miller.

19.  Plaintiff asked Officer Miller, "If we don't comply with the request are you going to arrest us?"

20.  Officer Miller responded with "I mean you get a ticket, it's not arrestable." and further explained "It would be an ordinance violation, you would be paying a fine."

21.  Plaintiff's explanation to Officer Miller that Plaintiff was not a threat and was willing to comply with the request because Plaintiff wanted no trouble with the City Police Department, was captured on several video recordings and by the lobby cameras.

22.  Officer Miller said, "your (Plaintiff) being fine, your being fine. You're willing to step outside."

23.  Plaintiff requested to speak with the Police Information Officer (hereafter PIO).

24.  At that moment, Detective Jose Delgado entered the public lobby and stated, "Have them step outside" and went directly towards Plaintiff.

25.  Plaintiff, being a disabled person and fearful due to the Defendant's angry demeaner, saw the Defendant was rapidly approaching and Plaintiff said, "Please don't touch me."

26.  Defendant immediately and unlawfully, and with anger, forcefully shoved Plaintiff directly into a protruding wall corner where Plaintiff fell.

27.  From the floor, Plaintiff exclaimed, "What the hell's the matter with you?" knowing, according to common law Tort (4th Ed. 1971), the intentional behavior to be unlawful, and Plaintiff's statement obviously angering Defendant Delgado.

28.  Defendant Delgado then reached down and again assaulted Plaintiff a second time by grabbing Plaintiff's left wrist and attempting to drag Plaintiff towards the exit, causing severe pain in Plaintiff's left arm and shoulder.

29.  As Defendant is dragging Plaintiff, making it impossible for Plaintiff to regain footing, Defendant forcefully says, "Get up."

30.  Plaintiff says, "Get off me cop!" and Defendant ceases assaulting Plaintiff by attempting to drag Plaintiff and releases his hold on Plaintiff's left wrist but still standing over Plaintiff menacingly and allowing Plaintiff to slowly and painfully regain footing while Plaintiff is saying, "You're a piece of shit.

You're a piece of garbage buddy." and Defendant responds with "Then get up. Get that drama outa here. You don't tell me no." in obvious anger, and on the verge of rage.

31.  At this point Plaintiff has not been informed of a citation, or of a detainment or of arrest but has been molested and battered unlawfully according to Tort law, by Defendant Delgado, due to Plaintiff lawfully recording in the public lobby of the City Police Department.

32.  Immediately after Plaintiff regained footing and is attempting to leave and is facing the exit, and is still no threat and weaponless, Defendant Delgado assaults Plaintiff again, for a third time, with a pain compliant hold on Plaintiff's left, bent elbow with plaintiff's video recording phone in Plaintiff's left hand and pushes Plaintiff towards the exit less than two feet away.

34.  Plaintiff, while  saying "Get off me man", and still not detained or arrested, quickly moves plaintiff's own left elbow, with left hand still holding the camera phone, straight down and away from Defendant Delgado towards Plaintiff breaking the pain compliant hold Defendant Delgado has on Plaintiff's person and enraging Defendant Delgado even more.

35.  A full second goes by and Defendant Delgado retaliates by striking Plaintiff so hard the blow immediately shuts off plaintiff's recording camera phone and the damaged camera phone goes flying into the wall as Defendant Delgado, now in a rage, falsely accuses Plaintiff by saying, "You can't strike me" loudly for the other officers in the room to hear and grabs Plaintiff's left arm again, swinging Plaintiff around and into a closed door and onto the floor while saying "Your under arrest."

37.  Plaintiff hearing Defendant Delgado say the words "you're under arrest", lays unmoving, unresisting and in painful shock on the floor where thrown by Defendant, as Defendant Delgado cruelly and unnecessarily lands on Plaintiff's back with a knee strike causing plaintiff considerable agony and bodily damage to that area and grabbing and twisting Plaintiff's left wrist in a pain compliant hold.

38. Defendant orders Plaintiff to "put your hands behind your back" and switching knees and twisting Plaintiff's left wrist viciously and unnecessarily, deliberately lands a second knee strike, this time to the back of Plaintiff's exposed neck, causing more bodily damage and severe pain, all while Plaintiff

remains prone and unresisting on the floor in a state of shock and complying with, and answering Defendant Delgado's order with "Yes sir".

39.  After the retaliatory arrest, wrist twisting, and two unnecessary and damaging knee strikes against Plaintiff, Defendant Delgado handcuffs the still unresisting Plaintiff while Watch Commander Jimenez, with BWC recording, is kneeling on the floor close beside Plaintiff's head to assist Defendant.

40.  Immediately after Plaintiff is retaliatorily arrested and handcuffed, Defendant stands up and using more excessive force, pulls viciously and forcefully on the handcuffs straight upwards and towards Plaintiff's face down head in order to inflict more abuse and pain, very nearly separating Plaintiff's shoulders out of the shoulder sockets and demanding impossibly for Plaintiff to, "Get up".

41.  Plaintiff screams in pain attempting to inform Defendant Delgado of Plaintiff's disabilities, to no avail due to Defendant Delgado's rage.

42.  Defendant finally allowed Plaintiff to stand as ordered but Plaintiff required assistance from Watch Commander and Defendant to stand.

43.  Plaintiff was moved to a back room of the City Police Department and questioned by still angry Defendant without Miranda warning.

44.  Plaintiff was never searched in any way and was retaliatorily arrested and falsely charged with assaulting an Officer/EMT, resisting arrest with violence and trespass after warning on Defendant Delgado's perjured arrest report, and Plaintiff's BWC was stolen by the police, for exercising Plaintiff's First Amendment Right to video record in public.

45.  After the excessive force retaliatory arrest, Plaintiff went to the hospital for scans to determine any bones broken, but no broken bones were found and Plaintiff was then kidnapped for 65 hours.

46.  Had Defendant Delgado been using a BWC as required of him by the City Police Department policy, such video and audio would have confirmed that all the events set forth by Plaintiff are true and correct.

47.  Plaintiff's own video, Officer's BWC videos, the City Police Department's public lobby's camera's videos and audio confirms that all the events set forth by Plaintiff are true and correct.

46.  Prior to the events with Plaintiff on 28 July 2022, Defendant has been shown on independent news videos to deliberately violate citizens Civil Rights with violence and without regard for consequences.

47.  Defendant Delgado committed perjury in his official arrest report.

48.  Prior to the events on 28 July 2022 Defendant Delgado had received no de-escalation training.

## COUNT 1 - 42 U.S.C. <sup>SS</sup> 1983 CLAIM AGAINST DEFENDANT DELGADO

49.  Plaintiff realleges paragraphs 1 through 48, *supra.*

50.  Defendant Delgado, by his actions alleged above, in confiscating Plaintiff's BWC without a warrant, and in battering, detaining and arresting Plaintiff, knowingly without justification and probable cause and based upon false and fabricated justifications on his official arrest report, effected an unreasonable seizure and arrest of Plaintiff, and used excessive force doing same that caused Plaintiff permanent personal injury, emotional suffering, and other manner of damages, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and same is actionable under 42 U.S.C <sup>ss</sup> 1983.

51.  Defendant Delgado, acting under color of law, see Williams v United States 341 U.S. at 101, 71 S. Ct.at 579,  and by his actions alleged above, in

battering, dragging, knee kicking unresisting plaintiff, wrist twisting and

violently pulling arms upwards toward the head on facedown handcuffed

Plaintiff in order to punish without adjudication and cause undue pain, as in

*Rochin,* this behavior "shocks the conscience" and violating section 20 (See

*United States v. Classic,* 313 U. S. 299, 313 U. S. 326) and the due process of Plaintiff's

Eighth and Fourteenth Amendment, and caused Plaintiff permanent personal

injury, emotional suffering, and other manner of damages, in violation of the

Eighth and Fourteenth Amendments to the United States Constitution, and

same is actionable under 42 U.S.C. $^{ss}$ 1983.

52.  Defendant Delgado, by his actions alleged above, in arresting,

detaining, (see California v Hodari (1991) "the mere grasping") cruelly

punishing and battering, because Plaintiff was video recording police in public,

a recognized and protected form of freedom of speech under the First

Amendment, (see *See Toole v. City of Atlanta*, 798 F. App'x 381, 387–88 (11th Cir.

2019); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000).) and in instigating

his detention, punishment and battery of Plaintiff de facto in punishment for

Plaintiff video recording in the City Police Department's public lobby and to

dissuade and discourage Plaintiff from making video recordings of Defendant or other police officers in the future, knowingly without justification or probable cause, and based upon false and fabricated justifications invalid under the law, effected an unreasonable seizure and arrest of Plaintiff, and used excessive force doing same that caused Plaintiff permanent personal injury, as well as mental pain and suffering, in violation of the First Amendment and Fourteenth Amendments to the United States Constitution, and same is actionable under 42 U.S.C. ss 1983.

53.  As a result of Defendant Delgado's intentionally perjuring his sworn affidavit ( *See*, *United States v. Debrow*, 346 U.S. 374, 377 (1953)) on 28 July 2023, at 17:59:59hrs, sworn to by means of physical presence before notary public Fernando Burga, who signed same at 28 July 2023, at 18:00:44hrs, the affidavit is vastly incongruent with police BWC videos, and Defendant Delgado's malicious conduct respecting Plaintiff, Plaintiff was kidnapped for sixty-five hours and is falsely charged with felonies and is defending same in court. Plaintiff has suffered and continues to suffer a complete lack of interest in photojournalism, lack of interest in friends and family, has suffered and continues to suffer serious physical injuries consisting of soft tissue damage to

neck and lower back confining Plaintiff mostly to bed, Plaintiff has suffered and

continues to suffer psychological injuries consisting of mental pain, anguish,

humiliation, shame, and public ridicule, as well as suffered inconvenience,

discomfort, and financial expense.

**Wherefore,** Plaintiff demands judgement against Defendant Delgado for

compensatory damages, property damages in the amount of $840.00, punitive

damages in the amount of $5,000,000.00, court costs if any arise, attorneys'

fees if any arise, and all other relief the Court finds just and proper.

<u>**COUNT TWO - 43 U.S.C. ˢˢ 1983 CLAIM**</u>

<u>**AGAINST DEFENDANT CITY OF PUNTA GORDA**</u>

54.  Plaintiff realleges paragraphs 1 through 48, *supra.*

55.  Defendant City instituted ordinance, Chapter 15, Section 15-48(d)-

(e) and other practices which lead to the Constitutional violations outlined in

this complaint, and caused Plaintiff's injuries, all in violation of the First,

Fourth, Eighth, and Fourteenth Amendments to the United States Constitution,

and same is actionable under the 42 U.S.C. ˢˢ 1983.

56.  At all times relevant and with the failures above-stated, despite its

notice regarding the propensity and history for Defendant Delgado to engage

in Constitutional rights deprivations, as well as his honesty problems, as seen in his report versus the police body worn cameras' videos of the encounter, the City had a policy or policies related to training Defendant Delgado and other officers generally which policy was that training, in fact, was simply not required, and therefore such policies were objectively deliberately indifferent to the likelihood that a particular Constitutional violation - violently detaining and battering a citizen with zero probable cause for either - would occur.

57.   At all times relevant, the City failed to supervise and discipline Defendant Delgado by failing to supervise properly and discipline him properly so as to avoid violating the Constitutional rights of citizens, even after being so warned of repeated concerns in that regard respecting Defendant Delgado by complaints and as noticed by independent news source's videos of Defendant's improper actions, which notices were wholly sufficient to put the City on notice that supervision and discipline of Defendant Delgado - at least - was required.

58.   At all times relevant, the City was aware or should have been aware of the need to train officers, such as Defendant Delgado, so that officers

followed a policy and process of making Constitutionally-sound detentions of and interactions with citizens, such as Plaintiff.

59. The City lacked any policy or process to train officers, or even supervisors, in this regard, and the lack of such training policy, process or program was inadequate to protect the rights of citizens by the officers who are intended to protect them.

60. As such, the actions of the City were sufficiently deliberately indifferent to the rights of citizens that its deliberate indifference was its official policy.

61. Had any of such proper training processes been done by the City prior to the detention of Plaintiff by Defendant Delgado, the violation of Plaintiff's Constitutional rights would not have occurred.

62. Even if the need to train and supervise officers generally was not so obvious as above pleaded, there was a sufficient pattern of Constitutional violations by Defendant Delgado that were given a "blind eye" by the City, thereby placing the City on constructive notice of the need to so train and supervise Defendant Delgado specifically.

63.  Defendant Delgado violated the rights of many people before
Plaintiff, and he only could accomplish that because the City never bothered to
notice, care about, address or resolve his propensity to violate the rights of
citizens and to be dishonest and violent in doing so.

64.  At all times relevant, the City instituted ordinance, Chapter 15,
section 15-48(d)-(e), which deliberately advocates for other than the
Constitution of the United States, and violates the rights of its' citizens, (*See
Toole v. City of Atlanta*, 798 F. App'x 381, 387–88 (11th Cir. 2019); *Smith
v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000), by not allowing video
recording of police in public.

65.  The video recording of public servants and government
officials is strictly content orientated where the viewpoint is portrayed
solely by the actions of the public servants and government officials
recorded, weather they deem to portray themselves properly according
to lawful, Constitutional activity or weather those public servants and
government officials choose to portray themselves in an unlawful,
Unconstitutional manner is wholly their choice, making the overbroad
restrictions on video recording City police officers in public, which is

imposed by the City with Ordinance Chapter 15 Section 15-48(d)-(e) completely inverse to several Supreme Court rulings.

66.   Had the City enacted proper Constitutional ordinances prior to the detention of Plaintiff by Defendant Delgado, the violation of Plaintiff's Constitutional rights would not have been violated and Plaintiff would have no need to seek Quo Warranto, to safeguard others.

66.   As a result of Defendant City's improper ordinances such as Chapter 26, Section 11.5(z), Chapter 15, Section 15-48(d)-(e), and the City Council having full knowledge through discussions, emails and advice from attorneys, these ordinances are unconstitutional and enacting the ordinances regardless, and also failure to supervise and train and to properly discipline Officers in the City's employ, Plaintiff has suffered and continues to suffer physical injuries to Plaintiff's person that are permanent and continuing in nature, permanent psychological injuries consisting of mental pain and anguish, humiliation, shame, and public ridicule as well as suffered inconvenience, discomfort, and financial expense, all in violation of the First, Fourth, Eighth and Fourteenth

Amendments to the United States Constitution, and same is actionable under

42 U.S.C. $^{ss}$1983.

**Wherefore,** Plaintiff demands judgement against Defendant City of Punta

Gorda for Quo Warranto, revocation of the City's charter, compensatory

punitive damages in the amount of $5,000,000.00, plus court costs, any

attorney's fees, and all other relief the Court finds just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all matters so triable.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

filed with the Clerk of the Court on this __11__ day of __April__ 2023, which will

send copies to all counsel of record.

There are 3526 words in this document.

Signed _J. L. Hoffman Jr._____

JERRY L. HOFFMAN JR.
Pro Se Litigant
18470 SE 18th LANE
Williston Florida, 32696
Phone (352)-339-4682
e-mail ImCatchULater@gmail.com