UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JERRY L. HOFFMAN, JR.,

       Plaintiff,

v.                                   Case No.  2:23-CV-130-SPC-NPM

JOSE DELGADO AND CITY
OF PUNTA GORDA,

       Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS AND
## MOTION TO STRIKE WITH MEMORANDUM OF LAW

COME NOW, Defendant Jose Delgado and Defendant City of Punta Gorda, through their undersigned attorney, hereby file and serve their Motion to Dismiss and Motion to Strike with Memorandum of Law.

### I. Alleged Factual Background and Procedural History

Generally, this action arises out of Plaintiff's July 28, 2022 arrest in the lobby of the Punta Gorda Police Department.  (*See* Doc. 5 ¶ 8).  Plaintiff allegedly visited the City's Police Department to inquire about his prior "FOIA request" and obtain complaint forms.  (Doc. 5 ¶ 8).  He was recording in the Police Department lobby and requested service through what Plaintiff described as a public service window.  (Doc. 5 ¶ 10).  An individual Plaintiff described as an officer left the public service window after realizing Plaintiff was recording.  (Doc. 5 ¶ 11).  City police officers entered the lobby and told Plaintiff (and others present with him) that if they were recording, to

Page 1 of 19

step outside the lobby due to an ordinance making it unlawful to record inside City facilities. (*See* Doc. 5 ¶¶ 12-14). Plaintiff responded that the officers would be violating Plaintiff's constitutional rights. (*See* Doc. 5 ¶ 15). Plaintiff was allegedly threatened with trespass if he did not comply. (Doc. 5 ¶ 18).

Detective Jose Delgado entered the lobby and directed Plaintiff (and others with him) outside. (*See* Doc. 5 ¶ 24). Plaintiff claims that Delgado shoved Plaintiff into a protruding wall corner where Plaintiff fell. (Doc. 5 ¶ 26). Delgado then allegedly grabbed Plaintiff's left wrist and attempted to drag Plaintiff toward the lobby exit. (Doc. 5 ¶ 28). After Plaintiff began standing up and regaining footing, Delgado allegedly used a pain compliance hold on Plaintiff's left arm. (*See* Doc. 5 ¶ 32). Plaintiff quickly moved his left arm, breaking the pain compliance hold and supposedly further angering Delgado. (Doc. 5 ¶ 34). Delgado then allegedly struck Plaintiff, although Plaintiff does not allege what Delgado supposed used to strike Plaintiff or where Plaintiff was struck. (*See* Doc. 5 ¶ 35). Delgado directed Plaintiff he was under arrest and then allegedly performed a "knee strike" upon Plaintiff and placed Plaintiff's left arm in a pain compliance hold again. (Doc. 5 ¶ 37). Plaintiff claims Delgado switched knees and performed a second "knee strike[.]" (Doc. 5 ¶ 38). Delgado placed Plaintiff in handcuffs. (Doc. 5 ¶ 40). Plaintiff was transported to a hospital and evaluated, finding no broken bones. (Doc. 5 ¶ 45). Plaintiff was arrested for assaulting a law enforcement officer, resisting arrest with violence, and trespass after warning. (Doc. 5 ¶ 44). Plaintiff's related criminal case remains pending.

Plaintiff initiated this action on February 27, 2023 by filing his initial complaint. (*See* Doc. 1 at 1).  Plaintiff then filed his Amended Complaint and Demand for Jury Trial on April 12, 2023.  (*See* Doc. 5 at 1).  On June 12, 2023, the Court struck a Second Amended Complaint Plaintiff filed on May 22, 2023 and directed that the Amended Complaint (Doc. 5) is the operative pleading.  (*See* Doc. 13).

Plaintiff's Amended Complaint contains several claims that are not each stated in separate counts.  In Count I, Plaintiff appears to bring a claim under 42 U.S.C. § 1983 against Delgado for false arrest, excessive force, violation of the Eighth Amendment, First Amendment retaliation, violation of the Fourteenth Amendment, and malicious prosecution.  In Count II, Plaintiff appears to bring a Section 1983 claim against the City of Punta Gorda for false arrest, excessive force, violation of the Eighth Amendment, violation of the First Amendment, First Amendment retaliation, and violation of the Fourteenth Amendment.

Defendants now moves to dismiss Plaintiff's Amended Complaint (Doc. 5) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to strike Plaintiff's demands for punitive damages from the City pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## II. Motion to Dismiss

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Evaluation of a complaint requires a two-step inquiry: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  The court, however, is not bound to accept as true a legal conclusion presented as a factual allegation in the complaint. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "'[D]etailed factual allegations'" are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).  A plaintiff must allege facts sufficient to "nudge[]" his or her claims "across the line from conceivable to plausible[] . . . ." *Twombly*, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 768 (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly* 556 U.S. at 557).  In such circumstances, the court should dismiss the plaintiff's claim for failure to state a claim upon which relief can be granted. *See Twombly*, 556 U.S. at 570.

**B.  Argument**

### 1.  Eighth Amendment Claims

Plaintiff cannot state any claim under Section 1983 for violation of his Eighth Amendment rights because he does not allege that he had been convicted as of the date of the alleged constitutional violations.[1]  "It is beyond cavil that the Eighth Amendment applies only after a prisoner is convicted."  *United States v. Myers*, 972 F.2d 1566, 1571 (11th Cir. 1992); *see also Graham v. Connor*, 490 U.S. 386, 398 (1989) (the Eighth Amendment applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions).  Plaintiff did not allege that he had been convicted and was serving a sentence at the time of the alleged incident that gave rise to this case, nor do the facts alleged in the complaint reasonably give rise to such an inference.  Instead, the complaint indicates Plaintiff was not in custody and visiting the Police Department lobby on his own volition.  (*See* Doc. 5 ¶¶ 8-12).  Therefore, Plaintiff's complaint should be dismissed to the extent that Plaintiff attempts to state any claim for violation of his rights under the Eighth Amendment.  *See McCreary v. Brevard Cty.*, No. 6:09-cv-1394-Orl-19DAB, 2010 WL 298395, at *4 (M.D. Fla. Jan. 20, 2010) (dismissing plaintiff's Eighth Amendment claims because he had not been convicted and incarcerated at the time of his alleged injuries).

---

[1] The Court may take judicial notice of the state court's docket and filings in *State of Florida v. Hoffman* (Circuit Court of the 20th Judicial Circuit, in and for Charlotte County, Florida, case number 22001209F), *see McDowell Bey v. Vega*, 588 F. App'x 923, 926-27 (11th Cir. 2014), which reflect that Plaintiff's criminal case is unresolved, with no conviction presently entered against Plaintiff.

### 2. Malicious Prosecution Claims

Plaintiff cannot state any claim for malicious prosecution because his criminal case is unresolved. To establish a federal malicious prosecution claim under Section 1983, a plaintiff must plausibly allege (1) the elements of the common-law tort of malicious prosecution and (2) a violation of the Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234-35 (11th Cir. 2004). To state a cause of action for malicious prosecution under Florida law, a plaintiff must establish six elements: (1) an original criminal or civil proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding. *Gomez v. Lozano*, 759 F. Supp. 2d 1335, 1337 (S.D. Fla. 2011). Plaintiff did not allege that his related criminal case in state court terminated in his favor—nor has it. Plaintiff's related criminal case in state court remains unresolved, with criminal charges arising from the incident that is the subject of this action still pending against Plaintiff. So, the Court should dismiss Plaintiff's malicious prosecution claims.

### 3. Fourteenth Amendment Substantive Due Process Claims

Plaintiff's Fourteenth Amendment claims should be dismissed to the extent Plaintiff attempted to assert that he was deprived of his right to substantive due process. If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under Fourteenth Amendment substantive due process. *See County of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5 (1998); *Graham v. Connor,* 490 U.S. 386, 394 (1989). For example, a claim for excessive use of force should be made under the Fourth Amendment and not under a Fourteenth Amendment substantive due process rubric. *See Graham*, 490 U.S. at 395; *Raspberry v. Johnson*, 88 F. Supp. 2d 1319, 1328-29 (N.D. Ala. 2000). In this case, Plaintiff has alleged violation of other specific constitutional provisions. So, his claims should be analyzed under the standards appropriate to those other, specific provisions and not a substantive due process framework. The Court should dismiss Plaintiff's complaint to the extent Plaintiff has alleged he was deprived of his right to substantive due process.[2]

### 4. First Amendment Claims

---

[2] Defendants maintain that Plaintiff's complaint is not properly construed to include any Fourteenth Amendment procedural due process claim. However, to be sure, Plaintiff has not adequately stated a procedural due process claim. To pursue a procedural due process claim, a plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). Plaintiff's complaint is silent on any process afforded to him to address any possible deprivation, let alone the constitutional adequacy of such process. Also, the Court held in *Sheets* that the challenged ordinance does not deprive an individual of procedural due process. 415 F. Supp. 3d at 1128.

Plaintiff cannot prevail on his claims for violation of the First Amendment and

claims for First Amendment retaliation.   Plaintiff challenges the City's Ordinance

Chapter 15 Section 15-48(d)-(e), which provide:

> (d) The City Council Chambers and conference rooms in the City Hall
> and City Hall Annex are hereby declared to be nonpublic forums unless
> or until a public meeting is convened in such areas pursuant to public
> notice. All City employee work areas within City Hall and the City Hall
> Annex which are designated by appropriate signage as work areas shall
> be considered as nonpublic forums. Members of the public are prohibited
> from entering City employee work areas without being escorted by a City
> employee. All other areas of the City Hall and City Hall Annex are
> hereby designated as limited public forums and only persons who are
> present to engage in legitimate public business with City officers or
> employees shall be authorized. It shall be a violation of this Ordinance to
> be within a nonpublic forum or a limited public forum without
> authorization. Unauthorized persons found by the City Manager or his
> designee to be within a nonpublic forum or a limit public forum and who
> refuse to leave the premises upon request, shall be considered a
> trespasser. Law Enforcement, at its option, at the request of the City may
> issue a trespass warning notice for this conduct.
>
> (e) Except within the City Council Chambers, conference rooms, and
> other locations in which a public meeting is being conducted pursuant to
> a public notice, it shall be unlawful and a violation of this Ordinance, to
> record video and/or sound within City-owned, controlled, and leased
> property, without the consent of all persons whose voice or image is being
> recorded. This prohibition shall not apply to any law enforcement
> activities. In addition to being a violation of this Ordinance, if anyone
> who is observed to be recording video and/or sound within City-owned,
> controlled, or leased property, without the consent of all persons whose
> voice or image is being recorded, and such person refuses to cease activity
> after being advised that such activity is prohibited under this Ordinance,
> such refusal shall be considered to be a disruption to the work of City
> government. Therefore, such persons shall be deemed to no longer be
> present within the City-owned, controlled, or leased property on
> legitimate public business. The City Manager and his designees are
> hereby authorized on behalf of the City of Punta Gorda, Florida to
> request any person who refuses to cease the unconsented video and/or
> sound recording to immediately leave the premises. Any person who
> refuses to cease the unconsented to video and/or sound recording, and

refuses to immediately leave the premises following the request of the City Manager or his designee, shall be considered as a trespasser. Law Enforcement, at its option, at the request of the City may issue a trespass warning notice for this conduct.

Similarly, Ordinance Chapter 15 Section 15-48(h)(15) prohibits, within the interior spaces of all City-owned, controlled, and leased building of the City of Punta Gorda:

> Audio and/or video recording anywhere inside of City buildings except during duly noticed public meetings, or as otherwise approved by the City Manager, or his/her designee. Except as otherwise approved by the City Manager, or his/her designee, audio and/or video recording may only be conducted within the City Council Chamber, and any room, or office within which said activity has been authorized by law. Any person found to be conducting audio and/or video recording except as authorized by herein, must cease doing so immediately if any visitor, City employee or City official expresses his/her desire not to be recorded. This rule does not apply to audio and/or video recording performed by authorized law enforcement personnel engaged in the performance of their official duties. Audio and/or video recording of public meetings must be undertaken in a quiet and orderly manner so as not to interfere with the conduct of the meeting, block the view of any person attending the public meeting, or block any aisle, row, ingress, or egress.

The City's ordinance is constitutional—facially and as applied to Plaintiff. This Court has already considered whether the challenged ordinance is constitutionally permissible under the First Amendment and determined that it is. *See Sheets v. City of Punta Gorda*, 415 F. Supp. 3d 1115, 1122 (M.D. Fla. 2019). First, the Court held that the challenged ordinance places reasonable restrictions on recording in City facilities given its purpose and context. *Id.* at 1123. The Court held that City Hall was a limited public forum from which the City was permitted to exclude speakers if the speaker is not a member of the class of speakers for whose special benefit the forum was created. *Id.* at 1122. The Court also acknowledged that the City may preserve the property

under its control for the use to which it is lawfully dedicated and may exercise control over access to the government workplace to avoid interruptions to the performance of the duties of its employees. *Id.* The Court also held that the challenged ordinance is viewpoint-neutral. *Id.* at 1124. Finally, the Court stated that the City could probably prohibit all recording under the ordinance. *Id.* at 1125.

The analysis from *Sheets* applies in this case, and the Court should reach the same conclusion that the challenged ordinance is constitutional. The general First Amendment right to record information about what public officials do on public property, particularly when a matter of public interest, is subject to reasonable time, manner, and place requirements. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). The First Amendment does not guarantee access to property simply because it is owned by the government. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 n.7 (1983); *Bloedorn v. Grube*, 631 F.3d 1218, 1230 (11th Cir. 2011). Instead, courts use forum analysis to evaluate government restrictions on private speech that occur on government property. *Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018). The City designated the Police Department (and other City-owned, controlled, and leased property) as a limited public forum. *See* City of Punta Gorda Ordinance Chapter 15 Section 15-48(e). In a limited public forum, the City is permitted to regulate the time, place, and manner of speech if content-based regulations are viewpoint neutral. *Crowder v. Housing Auth. of City of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993); *Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878 (11th

Cir. 2007).  The City did so through the challenged ordinance.  As the Court held in *Sheets*, the challenged ordinance is viewpoint neutral.  415 F. Supp. 3d at 1124.  The challenged ordinance makes no distinction based on any viewpoint of the individual recording.  So, the challenged ordinance permissibly restricted recording in the City's Police Department lobby and does not violate the First Amendment.[3]  Since Plaintiff recording in the Police Department lobby was not activity protected under the First Amendment, Plaintiff cannot state a viable claim for First Amendment retaliation.  *See Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)) (explaining that the first element of a First Amendment retaliation claim is activity protected under the First Amendment).

The Court should dismiss with prejudice each of Plaintiff's claims arising under the First Amendment.

### 5. Probable Cause Precludes Plaintiff's False Arrest, Malicious Prosecution, and First Amendment Retaliation Claims

Plaintiff cannot prevail on his claims for false arrest, malicious prosecution, and First Amendment retaliation because probable cause existed to arrest Plaintiff.  Lack of probable cause is an element of a claim for malicious prosecution.  *See Gomez*, 759 F. Supp. 2d at 1337.  To prevail on a claim for First Amendment retaliation related to an arrest, a plaintiff generally must prove lack of probable cause to establish causation.

---

[3] Notably, Plaintiff does not allege that he had consent of all persons whose voice or image is being recorded for Plaintiff to record audio and video.  Rather, his allegations indicate (1) lack of affirmative consent to recording and (2) that the officers present indicated affirmatively that they did *not* consent to being recorded by video or audio in the Police Department lobby.  (*See* Doc. 5 ¶¶ 14, 16, 18, 20, 24).

*See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1297 (11th Cir. 2019).  Probable

cause is an absolute bar to a Section 1983 claim for false arrest.  *Ortega v. Christian*, 85

F.3d 1521, 1525 (11th Cir. 1996).

Probable cause for Plaintiff's arrest is apparent from the face of Plaintiff's

complaint.  Plaintiff alleged that he was recording inside the Police Department's

lobby (Doc. 5 ¶¶ 10-11), Watch Commander Jimenez directed Plaintiff to go outside

since Plaintiff was recording (Doc. 5 ¶¶ 14-16), and that Plaintiff did not comply (*see*

Doc. 5 ¶¶ 18-25).  Therefore, it is apparent from the face of Plaintiff's complaint that

probable cause existed to arrest Plaintiff for resisting a law enforcement officer without

violence.  *See* Fla. Stat. § 843.02; *see also Senko v. Jackson*, No. 22-11877, 2023 WL

2518367, at *4 (11th Cir. Mar. 15, 2023) (officers had probable cause to arrest plaintiff

for violation of Section 843.02, Florida Statutes, after the plaintiff failed to comply

with verbal orders to stop the car and refused to exit his vehicle despite verbal orders

to do so); *C.E.L. v. State of Fla.*, 24 So. 3d 1181, 1185-86 (Fla. 2009) (the resistance

element is satisfied when the defendant's action, by his words, conduct, or a

combination thereof, constituted obstruction or resistance of the officer's legal duty).

Also, Plaintiff alleged he said, "Get off me cop!" after Delgado began restraining

Plaintiff—an additional violation of Section 843.02, Florida Statutes.  (Doc. 5 ¶ 30);

*see also Brown v. Guinee*, No. CV 19-00415-TUC-DCB (Lead case), No. CV 19-00418-

TUC-DCB (Consolidated case), 2022 WL 877208, at *11 (D. Ariz. Mar. 7, 2022)

(probable cause existed to arrest the plaintiff for disobeying a lawful order, process, or

other mandate of a court where plaintiff appeared to be recording inside a courtroom

in violation of an administrative order). Also, Plaintiff stated, "Get off me man" and quickly moved his own left elbow away from Delgado, breaking the pain compliance hold. (Doc. 5 ¶ 34). By doing so, Plaintiff violated Section 843.01, Florida Statutes, and Section 843.02, Florida Statutes, providing additional probable cause for his arrest. *See Wright v. State of Fla.*, 681 So. 2d 852, 853-54 (Fla. 5th DCA 1996) (state was not required to prove that the defendant actually struck a law enforcement officer to obtain a conviction under Section 843.01, Florida Statutes, and evidence that the defendant struggled, kicked, and flailed his arms and legs was sufficient for such conviction). Since probable cause existed to arrest Plaintiff for violating Section 843.01, Florida Statutes, and Section 843.02, Florida Statutes, the Court should dismiss with prejudice Plaintiff's claims for malicious prosecution, false arrest, and First Amendment retaliation.

### 6. Qualified Immunity for Delgado

Since Plaintiff failed to state claims against Delgado for violation of the First Amendment, Eighth Amendment, Fourteenth Amendment, or Fourth Amendment (through false arrest or malicious prosecution), Plaintiff cannot establish violation of Plaintiff's <u>clearly-established</u>, federally-protected rights by Delgado. So, Delgado is entitled to qualified immunity on those claims.[4]  *See Andujar v. Rodriguez*, 486 F.3d

---

[4] Based on the allegations in the amended complaint, Delgado was performing discretionary functions at all relevant times. *See Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019) (police officers were clearly performing discretionary functions when pursuing and apprehending plaintiff in response to a 911 call); *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (making an arrest is a discretionary function for a law enforcement officer).

1199, 1202 (11th Cir. 2007) (qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known).   Defendants maintain that Plaintiff's complaint is construed as containing only federal claims, but to be sure, if Plaintiff attempted to state any claim against Delgado under Florida law, Delgado would also be entitled to immunity under Section 768.28(9)(a), Florida Statutes: "An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

### 7. Section 1983 Claims Against the City

The Court should dismiss Plaintiff's Section 1983 claims against the City because Plaintiff failed to allege facts sufficient to establish *Monell*[5] liability.[6]  To pursue section 1983 liability against a municipality, a plaintiff must allege facts sufficient to demonstrate (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional

---

[5] *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978).
[6] Although Defendants focus, in this section, on lack of sufficient allegations to establish official, municipal policy, Defendants do not concede that any constitutional violation occurred.

right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Monell*, 436 U.S. at 691. The municipal policy must be the "moving force" behind the constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Random or isolated incidents do not establish a custom or policy, and failure to stop such isolated incidents does not amount to tacit authorization. *Depew v. City of St. Mary's,* 787 F.2d 1496, 1499 (11th Cir. 1986). A plaintiff cannot rely upon *respondeat superior* to hold a governmental entity liable under Section 1983. *Monell*, 436 U.S. at 692.

This Court has previously held that pleading in a conclusory and boilerplate manner is not adequate to state a *Monell* claim. *See Derossett v. Ivey*, Case No. 6:20-cv-716-Orl-37GJK, 2020 WL 4547780, at *3 (M.D. Fla. Aug. 6, 2020); *see also McCants v. City of Mobile*, 752 F. App'x 744, 748 (11th Cir. 2018) (affirming dismissal of claims against city because plaintiffs "fail to support their municipal liability claims with anything other than 'a formulaic recitation of the elements of the cause of action.'"); *Grider v. Cook*, 522 F. App'x 544, 547-48 (11th Cir. 2013); *Harvey v. City of Stuart*, 296 F. App'x 824, 826 (11th Cir. 2008) (dismissing a *Monell* claim where the plaintiff "failed to identify any policy or custom that caused a constitutional violation" and offered only "vague and conclusory allegations"). Plaintiff made only boilerplate and conclusory allegations to support his Section 1983 claims against the City.

Plaintiff alleged that the City failed to supervise and discipline Delgado properly "even after being so warned of repeated concerns in that regard respecting Defendant

Delgado by complaints and as noticed by independent news source's videos of Defendant's improper actions . . . ." (Doc. 5 ¶ 57). Plaintiff also alleged that Delgado supposed "violated the rights of many people before Plaintiff . . . ." (Doc. 5 ¶63). However, these allegations are insufficient to establish a policy, custom, or widespread practice for *Monell* liability. In *Weiland v. Palm Beach Cty. Sheriff's Office*, the Eleventh Circuit explained that allegations of prior incidents must be actual, prior violations of federally-protected rights—not simply complaints. *See* 792 F.3d 1313, 1328-29 n.20-21 (11th Cir. 2015). *Weiland* cited *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987), and explained that the Eleventh Circuit held in *Brooks* that the defendant city did not have adequate notice of misconduct even where there had been ten citizen complaints about the implicated officer because the plaintiff never demonstrated that the past complaints had any merit. *Id.* at 1328 n. 20. The same applies in this case. Furthermore, although the Supreme Court has hypothesized a single-incident, obvious-need exception, *see City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989), neither the Supreme Court nor the Eleventh Circuit has ever applied it, *see Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1121 (M.D. Fla. 2018), and the alleged facts and circumstances of this case do not support such a claim.

### 8. Quo Warranto is Inapplicable

Plaintiff has requested quo warranto relief, but quo warranto is entirely inapplicable to this action. "The term 'quo warranto' means 'by what authority.' This writ historically has been used to determine whether a state officer or agency has improperly exercised a power or right derived from the State." *Fla. House of Reps. v.*

*Crist,* 999 So. 2d 601, 607 (Fla. 2008), *cert denied,* 555 U.S. 1212, 129 (2009).  Under Florida law, this common law remedy "is employed either to determine the right of an individual to hold public office or to challenge a public officer's attempt to exercise some right or privilege derived from the State." *State ex rel. Bruce v. Kiesling,* 632 So. 2d 601 (Fla. 1994).  Quo warranto can afford no relief for alleged official misconduct and cannot be employed to test the legality of the official action of public or corporate officers.  *Behr v. Ticktin*, CASE NO. 9:19-CV-80722-ROSENBERG, 2019 WL 11639535, at \*2 (S.D. Fla. June 7, 2019).  "It is one of the fundamentals of procedure in quo warranto that the writ will not be issued where there is another ample and sufficient remedy provided by law for the relief sought." *State v. Duval Cty.,* 105 Fla. 174, 175, 141 So. 173 (Fla. 1932).  Under federal law, only the Attorney General of the United States can institute a quo warranto action against a public official.  *See Andrade v. Lauer,* 729 F.2d 1475, 1497-98 (D.C. Cir. 1984).

In this case, Plaintiff does not appear to challenge any City official's right to hold public office.  Instead, he seeks remedies for alleged wrongdoing by a City *employee*.  Also, Plaintiff has requested another remedy: money damages.  (*See* Doc. 5 at 15, 20).  So, quo warranto relief is entirely inappropriate in this action and unavailable to Plaintiff.

### III. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The Court should strike Plaintiff's demands for punitive

damages from the City (Doc. 5 p. 20) because punitive damages are not available for Section 1983 claims against governmental entities. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) (local government entities are immune from punitive damages in actions brought pursuant to 42 U.S.C. § 1983); *Kubany v. Sch. Bd. of Pinellas Cty.,* 839 F. Supp. 1544, 1551 (M.D. Fla. 1993) ("[P]unitive damages are not available under § 1983 from a governmental entity."); *see also Petchem, Inc. v. Canaveral Port Auth.*, 368 F. Supp. 2d 1292, 1295-96 (M.D. Fla. 2005). Under Florida law, punitive damages are also not permitted against governmental entities. *See* Fla. Stat. § 728.28(5) ("The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment.").

## IV. Request for Relief

WHEREFORE, Defendant City of Punta Gorda and Defendant Jose Delgado respectfully request that the Court enter an order dismissing Plaintiff's Amended Complaint (Doc. 5), striking Plaintiff's demand for punitive damages from the City, and for any other relief the Court deems just and proper.

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), counsel for Defendants conferred via telephone with Plaintiff in a good faith effort to resolve the issues raised in this motion. Plaintiff is unopposed to dismissing Plaintiff's Eighth Amendment claims and claim for writ of quo warranto but is otherwise opposed to the relief requested in this motion.

Respectfully submitted,

*/s/ Frank Mari*
Frank M. Mari
Florida Bar No. 93243
Roper, P.A.
2707 E. Jefferson Street
Orlando, FL 32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary email: fmari@roperpa.com
Secondary email: ihaines@roperpa.com
Attorney for Defendant City of Punta Gorda and Defendant Jose Delgado

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2023, I filed a true and correct copy of the foregoing with the Clerk of the Court by using the CM/ECF system and served copies via U.S. Mail and e-mail upon the following non-CM/ECF participant: Plaintiff Jerry L. Hoffman, Jr., (ImCatchULater@gmail.com), 18470 SE 18th Lane, Williston, Florida, 32696.

*/s/ Frank Mari*
Attorney for Defendant City of Punta Gorda and Defendant Jose Delgado