FILED

## UNITED STATES DISTRICT COURT

2023 JUL 14  AM 11: 42

## MIDDLE DISTRICE OF FLORIDA

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

## FORT MYERS DIVISION

**Jerry L. Hoffman Jr.**

Plaintiff

V.                                                    Case no. 2:23-cv-130-SPC-NPM

**Jose Dalgado,**

**City of Punta Gorda Police Dept,**

**and City of Punta Gorda,**

Defendants

---

# PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION TO DISMISS AND MOTION TO STRIKE WITH MEMORANDUM OF LAW

Plaintiff Pro Se, Jerry L. Hoffman Jr., response to Defendant Jose Delgado

and Defendant City of Punta Gorda Motion to Dismiss and Motion to Strike with

Memorandum of Law.

## I. FACTUAL BACKGROUND AND PROCEDUAL HISTORY

This civil action is due to the unlawful arrest of Plaintiff on July 28, 2022,

(*See* Doc.5 @35) in the public lobby of the City of Punta Gorda Police Department.

(*See* Doc.5 @ 10). Plaintiff and three other photojournalists visited the City's Police Department to inquire about several ignored "FOIA requests" and obtain complaint forms. (*See* Doc. 5 @ 8). Plaintiff was recording as he entered the public lobby of the City's Police Department and approached the public window for service and requested service. (*See* Doc.5 @ 10). Upon realizing Plaintiff was video recording, the officer behind the window left, denying Plaintiff service. (*See* Doc.5 @ 11). Officers Burga, Miller, and Watch Commander Jimenez, wearing Body Worn Cameras, entered the public lobby. (*See* Doc.5 @ 12, 13). Watch Commander Jimenez *asked* Plaintiff and others to step outside due to Plaintiff recording, claiming a violation of city ordinance, Chapter 15, Section 15-48(d)-(e). (*See* Doc.5 @ 14, 16). Plaintiff, knowing the assertion of Federal Rights, when plainly and reasonably made, is not to be defeated under the name of local practices, responded that the officers would be violating Plaintiff's Constitutional Rights by enforcing the city ordinance. (*See* Doc.5 @ 15). Plaintiff was threatened with trespass by Watch Commander Jimenez if Plaintiff did not comply. (*See* Doc.5 @ 18). Plaintiff was explaining to Officer Miller that Plaintiff would comply and would leave, was not a threat and wanted no trouble with the City's Police Department. (Doc.5 @ 21), Officer Miller assured Plaintiff that Plaintiff was "being fine... you're

willing to step outside" and if the ordinance was violated, it was not an arrestable

offence but could generate a citation wherein a fine would be levied. (Doc.5 @ 20,

22).

As Plaintiff was requesting a Public Information Officer before leaving,

Defendant Jose Delgado entered the public lobby and Stated to the Officers

present to "Have them step outside", heading directly at Plaintiff. (Doc.5 23-24)

Plaintiff, being fearful of Defendants obviously angry demeanor and rapid

approach, requested that Defendant Delgado not touch Plaintiff. (Doc.5 @ 25).

Ignoring the city police department's policy on de-escalation and Plaintiffs

attempt to leave, Defendant Jose Delgado immediately molested Plaintiff by

shoving Plaintiff, who is disabled, into a protruding wall corner causing plaintiff to

fall. (Doc.5 @ 26). Plaintiff made statements that angered Defendant Jose Delgado

who assaulted plaintiff yet again by grabbing Plaintiff's left wrist and attempting to

drag Plaintiff towards the exit, causing severe pain in Plaintiff's shoulder. (Doc.5 @

27, 28). Defendant Jose Delgado belittles Plaintiff while dragging Plaintiff by

forcefully saying "get up" (Doc.5 @ 29) Defendant Jose Delgado now obviously

enraged by Plaintiff's next three statements of "Get off me cop", "You're a piece of

shit", "You're a piece of garbage buddy" releases Plaintiff and allows Plaintiff to

arise saying "... you don't tell me no". (Doc.5 @ 30) During all of the interaction

and assault, Plaintiff has not been informed of detainment, arrest or even a

pending citation. (Doc.5 @ 31). Plaintiff, after regaining footing, again attempting

to exit and again being assaulted by a pain compliant hold on the left arm and

Plaintiff quickly removing the arm from Defendant Delgado's grip, while plaintiff is

saying, "Get off me man" did Defendant Jose Delgado in a rage, retaliatorily strikes

Plaintiff's hand and camera phone sending it flying and loudly stating for the other

Officers to hear, "you can't strike me". (Doc.5 @ 32-35) Defendant Delgado again

grabs Plaintiff's left arm and throws Plaintiff to the floor saying, "you're under

arrest". (Doc.5 @ 37). Plaintiff hearing the words "you're under arrest" and laying

unresisting, is subjected to a knee strike to the lower back and a wrist twist of the

left wrist. (Doc.5 @ 37) As Plaintiff is lying face down on right arm unresisting,

Defendant Delgado increases the twist on Plaintiff's left wrist and delivers a

second knee strike to the exposed neck of Plaintiff (Doc.5 @ 38). Plaintiff, still

unresisting, is handcuffed and immediately after the unlawful, retaliatory arrest,

while still lying face down and unresisting, Defendant Jose Delgado, enraged, pulls

viciously and forcefully, vertically upwards and towards Plaintiff's head inflicting

more abuse and unnecessary pain demanding impossibly for Plaintiff to "get up"

causing Plaintiff to scream in agony. (Doc.5 @ 40, 41). Defendant Jose Delgado finally allows Plaintiff to stand as ordered, and assistance to stand is required and given by Watch Commander Jimenez. (Doc.5 @ 42). Plaintiff is moved to a back room and questioned by Defendant Delgado without Miranda warning. (Doc.5 @ 43). Plaintiff, after having been falsely charged with assaulting an Officer/EMT, resisting arrest with violence and trespass after warning, was never searched for weapons or contraband and Plaintiff's own Body Worn Camera was taken by police without warrant. (Doc.5 @ 44). Plaintiff was transported by ambulance to the local Emergency Room and evaluated for any broken bones, then incarcerated. (Doc.5 @ 45). Defendant Jose Delgado perjured his official report to effect arrest and Plaintiff's own video and City of Punta Gorda Police Officers Body Worn Camera videos confirms all the events set forth by Plaintiff to be factual. (Doc.5 @ 47). Plaintiff's related criminal case remains pending.


Plaintiff initiated this action on February 27, 2023, by filing the initial complaint (*See* Doc. 1 @ 1). Plaintiff filed Motion to proceed In Forma Pauperis on February 27, 2023, granted on April 3, 2023. Plaintiff Filed an Amended Complaint and Demand for a Jury Trial (*See* Doc. 5 @ 1) on April 12, 2023, which has some

deficiencies in it so Plaintiff filed a Second Amended Complaint on May 12, 2023,

with leave from the court and the Second Amended Complaint was struck and

Complaint (Doc 5) is the operative pleading. Plaintiff is a Pre se litigant and thanks

the court for allowing Plaintiff to participate in the legal process despite Plaintiffs

lack of refined litigant skills. Plaintiff will attempt to cure any deficiencies in these

claims with this response to Defendants Motions.

## II. RESPONSE TO DEFENDANTS MOTION TO DISMISS

### A. Legal Standard

The phrase, "Evaluation of a complaint requires a two-step inquiry", is from

the case of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and as in *Ashcroft v*

*Iqbal,* a complaint must contain sufficient factual matter, accepted as truth, to

"state a claim to relief that is plausible on its face". Also as in *Ashcroft v Iqbal,* "a

court should accept the facts pleaded in the complaint as true unless facts merely

restate legal conclusions. The complaint (Doc.5), is far from elegant, but the

complaint "is plausible on its face", allows the court to draw "reasonable

inference" and satisfies Fed. R. Civ. P. Rule (8)(a) (1)(2)(3), (1) Jurisdiction (Doc.5 @

3), (2) Claim showing pleader is entitled to relief... In Count I, Plaintiff brings a

claim under Title 42 U.S.C. $1983 against Defendant Jose Delgado for false arrest, excessive force, First Amendment violation and retaliation, violation of Fourth, Eighth and Fourteenth Amendments rights. (Doc.5 @ 50-53).

In Count II, Plaintiff brings a claim under Title 42 U.S.C. $1983 against Defendant City of Punta Gorda as in *Monel* for violation of First Amendment rights. (Doc.5 @ 55-66). (3) Demand for the relief sought (Doc.5 @ page15, page20) **"Wherefore** plaintiff demands... "

In *Twombly*, 550 U.S. at 555, 557, in defining the "plausibility" standard, the Supreme Court stated, claim has **factual plausibility** when the plaintiff pleads factual content that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged. Reasonable inference means "conclusions which are regarded as logical by reasonable people in the light of their experience in life." (Lannon *v. Hogan*,1983). *If* a citizen was peaceably violating a city ordinance, a reasonable Defendant/Officer would have written a citation, not attempt to shove the citizen out the exit or brutalize the citizen.

The factualness of the complaint is very relevant, and the veracity of the complaint is as true as Plaintiff can obtain, by being present and by viewing

several police officers' videos taken during the event. When viewed in the light most favorable to the plaintiff, the complaint has reasonable inference that plausibly gives rise to an entitlement of relief.

**Plaintiff does not oppose Defendants Motion to dismiss Quo Warranto.**

**Plaintiff does not oppose Defendants Motion to dismiss Malicious Prosecution Claim.**

**B. Argument**

### 1. First Amendment Claims and Section 1983 Claims Against the City the Monel Doctrine

Plaintiff opposes Defendants Motion to dismiss Plaintiffs First Amendment claim and Monel claim.

Under Monel, the United States Supreme Court held that a local government is a "person" that can be sued under [s] 1983: civil action for deprivation of rights.

[1] The Court, however, required that a [s] 1983 claim against a municipal entity be based on the implementation or execution of a "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that party's officers".

[10] Additionally, the Court held that municipal entities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels".

The City of Punta Gorda's Ordinance, Chapter 15 Section 15-48(a)(b)(d)(e)(h)(15) {hereafter "Ordinance"} is unconstitutional in that it is overbroad and overreaching "... Statutes are overbroad when they cause the preemptive self-silencing of speakers whose message would be entitled to Constitutional protection. See *Reno v ACLU* 521 U.S. 844, 874 (1977). Supreme Courts Overbreadth Doctrine, "a statute that affects First Amendment rights is unconstitutional if it prohibits more protected speech or activity than is necessary to achieve a compelling government interest". Overreaching refers to actions that violate the principles of authority or due process, such as abuse of power.

There is extraordinarily little, if any, compelling government interest, for quenching or prior restraint of the First Amendment, as the Ordinance does, where city hall or police department public areas are concerned, unless the interest is to rid government of transparency. However, there is overwhelming

public interest in our local government of the newsworthy happenings that occur at city halls and police departments on a day-to-day basis.

The ordinance is vague and is a form of prior restraint. Vague: characterized by such a lack of precision that a person of ordinary intelligence would have to guess if particular conduct is being proscribed. **Definition In First Amendment law**, prior restraint is government action that prohibits speech or other expression before the speech happens. "The First Amendment forbids the government to impose such prior restraints upon its citizens. See Gilk, 655 F.3d at 82.

The City's Ordinance Chapter 15 Section 15-48(a)(b)(c)(d)(e)(h)(15) attempts to "chill" the freedom of speech and is vague in that it seeks to turn public areas, areas where a private citizen is at liberty to lawfully be present and conduct business with the City, into limited public forums and nonpublic forums, under the premise that the Ordinance is "consistent with decisions of the Supreme Court" when in fact the Ordinance is not. The Supreme Court's premise on limited and non-public forums is essentially, time, place, and manner, and **if it serves a  compelling government interest**.  The Ordinance serves no compelling government interest. (See *Catron v City of St. Petersburg*, 658 F.3d 1260 (2011)

"Because Plaintiffs possess a private liberty interest in lawfully visiting city property that is open to the public")

The Ordinance is ambiguously vague in that some areas are misrepresented by the ordinance and the City Manager. Understandingly there are areas inside these facilities that are not open to the public, therefore those areas are private and are designated limited or non-public forums. In Ordinance part (a), *How areas within enclosed facilities owned, controlled, and leased by the City of Punta Gorda are classified is based upon their intended use.* Then in Ordinance part (b) *The City Manager is hereby authorized* to manage public **access** to enclosed City-owned, controlled, and leased property. The Ordinance serves no "compelling government interest" in designating a public area that is open to the public, areas where a private citizen is at liberty to lawfully be present and conduct business, such as inside a public foyer, public lobby, a public hallway, or a public auditorium, as a limited public forum or a non-public forum, yet the City Manager has classified **all** areas within enclosed City-owned, controlled, and leased properties as limited or non-public forums. (See Ordinance 15-48(d)). There are no public areas classified as public forum areas that should be classified as such, per the Ordinance, "based upon their intended use", restraining the First Amendment

within enclosed City-owned, controlled, and leased properties. If areas are "classified based upon their intended use" the Ordinance only allows the City manager to "manage public access" to those public areas.

The Ordinance states that "certain areas which are intended primarily for the use of City employees in the conduct of their business..."

**American jurisprudence 2nd,** ⁵473 [13] prior restraint on speech that is premised merely on protecting business interests fails First Amendment scrutiny.

**American Jurisprudence 2nd addition,** ⁵472 **Freedom from prior restraints and censorship.** Freedom of speech and of the press, historically considered and taken up by the Federal Constitution, means principally, although not exclusively,

[1] immunity from previous restraints or censorship. [2] The term "prior restraint," for purposes of the right to free speech, is an administrative or judicial order forbidding certain communications when issued in advance of the time that such communications occur. [3] A prior restraint on speech is the most serious and least tolerable infringement on First Amendment rights. [4] Temporary restraining orders and permanent injunctions, court orders that actually forbid speech activities, are classic examples of prior restraints. [7] An essential element of the liberty of the

press is its freedom from all censorship over what shall be published, and

exemption from control, in advance, as to what shall appear in print.

[8] Censorship is a form of infringement upon the freedom of expression to be

especially condemned. [9] Indeed, the First Amendment does not permit the

censorship of expression not brigaded with illegal action. [10] For First Amendment

purposes, prohibiting the publication of a news story is the essence of censorship

and is allowed only under exceptional circumstances. [11] The First Amendment

directs the courts to be especially skeptical of judicial determination must be

assured.

The U.S. Court of Appeals for the Eleventh Circuit has held that there is a

First Amendment right to record matters of public interest, including the conduct

of police occurring on public property. [See *Toole v. City of Atlanta*, 798 F. App'x

381, 387–88 (11th Cir. 2019); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir.

2000).

The Ordinance is viewpoint discriminatory under the Unbridled-Discretion

Doctrine in that the ordinance allows the City Manager and City employees

unbridled discretion to provide video recording consent to some visitors while

denying consent to other visitors, without providing any guidelines or safeguards of any kind. "Perhaps the plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided." Barrett, 872 F.3d at 1221. "In Barrett", the Eleventh Circuit explained: "In these circumstances, the official can grant or deny a permit for any reason she wishes. Such a grant of unconstrained power is unconstitutional under the First Amendment for two reasons: first, it creates an incentive for speakers to self-censor in hopes of being granted a permit, and second, it is difficult for courts to determine whether an official's standardless permit decision was impermissibly based on content or viewpoint". See *Lakewood*, 486 U.S. at 757-59, 108 S. Ct. 2138. "The unbridled-discretion doctrine applies in a limited public forum." Id. at 1226 (citing *Child Evangelism Fellowship of Md., Inc. v. Montgomery City. Pub. Schs.*, 457 F.3d 376, 386-87, see *Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation*, 322 F.3d 1298 (11th Cir. 2003)

The United States District Judge S. Chappell said, "These are separate buildings, but that distinction does not appear relevant. No party argues the buildings should be treated differently." *Sheets v. City of Punta Gorda*, 415 F. Supp.

3d 1115, 1120 n.2 (M.D. Fla. 2019). Plaintiff concurs that all government buildings are newsworthy, especially city halls and police departments.

" An individual does not have an expectation of privacy in items or places he exposes to the public. See *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967) In other words there is no expectation of privacy in public.

"Governments descend to the level of a mere private corporation and take on the characteristics of a mere private citizens and are regarded as entities entirely separate from government." (*Clearfield trust v United States*) 318 U.S. 363 (1943) "When governments enter the world of commerce, they are subject to the same burdens as any private firm or corporation" *U.S. v. Burr,* 309 U.S. 242 (1940).

### C. Excessive Force, Violation of First Amendment, First Amendment Retaliation, And Violations of Fourth, Eighth and Fourteenth Amendment Claims

Plaintiff should prevail on Excessive Force claim, Violation of first Amendment, First Amendment Retaliation, and Violations of Fourth, Eighth and Fourteenth Amendments Claims, due to fact, Plaintiff was willing to exit the public lobby of the police department, negating probable cause, and Plaintiffs willingness to leave was recognized and recorded by the video recorded statement of Officer Miller.

(Doc.5 @ 22). Plaintiff and others were not ordered but requested to "please step outside" by Watch Commander Jimenez, still, Plaintiff answered the request in the affirmative (Doc.5 @ 22), again, negating probable cause.

Plaintiff having knowledge of *Davis v Wechsler* 236 U.S. 22 AT 24, "The assertion of Federal Rights, when plainly and reasonably made, is not to be defeated under the name of local practices." Informed Watch Commander Jimenez of the impending Civil Rights violation, and stated to Officer Miller, Plaintiff was willing to leave and wanted no trouble with the police and was not a threat. (Doc.5 @ 21). The Commander of the watch, Jimenez, as Watch Commander and in command at the time of the incident, and as a somewhat competent and knowledgeable Police Officer, was perfectly capable of determining if the Ordinance had been violated, and if the Ordinance had been violated, issue a citation.

---

[1]Notably, at no time during the events of 28 July 12, 2022, did any of the police officers present request not to be video recorded, leaving Plaintiff to assume consent to be recorded was implied.

**First Amendment Violation**

Plaintiffs First Amendment Right of freedom of speech, was violated by Defendant Delgado, and Defendant City of Punta Gorda. [See, *State v Saiez*, 498 So.2d 1125 (Fla 1986) The criminalization of inherently innocent objects or activity which interferes with the legitimate personal and property rights of individuals without evidence of criminal behavior has repeatedly been condemned as violative of due process and unconstitutional...  Also see *Marbury v Madison* 5 US (1 Cranch) 137 (1803) "a law repugnant to the Constitution is void."

see *State v Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985) In concluding that the officers did not have a reasonable expectation of privacy which society would recognize. See *Glik v Cunniffe*, 655 F.3d 78 (1st Cir. 2011) The United States Court of Appeals for the First Circuit held that a private citizen has the right to record video and audio of police carrying out their duties in a public place. In *Houston v Hill,* the court noted that the freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation.

## First Amendment Retaliation and Excessive Force

"Broadly speaking, the use of force by law enforcement officers becomes necessary and is permitted under specific circumstances, such as in self-defense or in defense of another individual or group." International Association of the Chiefs of Police, *Police Use of Force in America, 2001*, Alexandria, Virginia, 2001.

The factual issue is whether Plaintiff video recording was the motivating or substantial factor for the adverse action Defendant Delgado took in this case. The adverse actions were assaulting Plaintiff immediately upon Defendant Delgado entering the public lobby, a public place. Plaintiff had entered to conduct business with the City, and for news purposes and safety, to record those interactions.

### Fourth Amendment Violation

Excessive force was used when no force was required. There was no probable cause or reasonable articulatable susception that Plaintiff was in any way a threat or had violated any law or ordinance due to the fact, (See Doc.5 @21, 22) Plaintiff was willing to leave after being told of a possible violation of a City Ordinance and was literally attempting to leave when Plaintiff was assaulted by Defendant Delgado, who had just emerged from a back area, saw Plaintiff video recording and without knowledge or understanding of events and against Punta Gorda Police Department's de-escalation policies, went immediately and assaulted

Plaintiff for video recording without determining if Plaintiff had in fact violated the Ordinance or was in fact leaving, making Defendant Delgado's actions retaliatory in nature for Plaintiff video recording. Defendant Delgado, as part of, and in retaliation for, Plaintiff video recording, struck Plaintiff's camera after shoving and dragging Plaintiff, (Doc.5 @ 35) sending it flying and destroying it in the process.

In De Facto, Defendant Delgado was manufacturing a senecio whereby a retaliatory arrest could be and was perpetrated, thereby violating Plaintiff's Fourth Amendment right to be secure in person, papers and effects. (See U.S. Constitution Amendment IV) Furthermore, **If** Plaintiff was foolishly ignorant enough to, as the falsified report claims, assault an officer/EMT, it would be prudent to search the offender for contraband. Plaintiff was never searched by anyone, nor was plaintiff Mirandized before being questioned by Defendant Delgado, proving such anger as to forget/ignore police protocol due to rage, further signifying retaliation.

### Eighth Amendment Violation Claims

"The Eighth Amendment is perhaps the most known in regard to police brutality because it protects individuals from cruel and unusual punishment.

Officers are required to approach each situation in a manner that corresponds to the level of the threat, beginning with the least aggressive measures first. If a law enforcement officer uses force that is beyond what is necessary to bring the situation to a resolution, they have deprived the victim of due process and the protection of the Eighth Amendment." Christopher Brown, Esq.

Without a conviction for a violation of law and assumed innocence until proven guilty, Plaintiff was punished by Defendant Delgado with cruel and unusual punishment and excessive force, by shoving disabled Plaintiff, dragging plaintiff, vicious knee kicks, pain compliant holds, vicious snatching upwards of handcuffed arms while Plaintiff was facedown, handcuffed and unable to arise as ordered, effectively violating Plaintiff's Eighth Amendment Right to be free of cruel and unusual punishment. Nowhere in our Constitution's Eighth Amendment is there a stipulation that requires a conviction of a violation of law, to enact cruel and unusual punishment standards. (See U.S. Constitution, Amendment VIII) "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted".* Defendant Delgado inflected cruel and unusual punishment in retaliation for Plaintiff video recording in public. In *McCreary v Brevard Cty.* (M.D. Fla. Jan. 20, 2010). Parker is subject to suit in his

official [4] capacity as Brevard County Sheriff Under 42 U.S.C. § 1983. *See Ortega v.*

*Schramm,* 922 F.2d 684, 694 (11th Cir.1991).

------------------------------------

[2]Also, in response to Defendants note 1 for the Court to take judicial notice, Heck
generally does not bar claims relating to an unlawful arrest. 350 F. 3d at 1160

_____

### Fourteenth Amendment Violation Claim

Plaintiff opposes Defendants Motion to dismiss Plaintiff's Fourteenth

Amendment Claim.

Due to, ***AMENDMENT XIV, Section 1,*** of our United States Constitution; *All*

*persons born or naturalized in the United States, and subject to the jurisdiction*

*thereof, are citizens of the United States and of the State wherein they reside. No*

*state shall make or enforce **any** law which shall abridge the privileges or*

*immunities of citizens of the United States; nor shall any State deprive any person*

*of life, liberty, or property, without due process of law; nor deny to any person*

*within its jurisdiction the equal protection of the laws.*

Defendant Delgado violated Plaintiff's Fourteenth Amendment Right, Due

Process clause by violating Plaintiff's Fourth Amendment. When Defendant

Delgado illegally confiscated Plaintiff's Body Worn Camera without obtaining a warrant. **Amendment IV** *"... and no Warrant shall issue, <u>but upon probable cause,</u> <u>**supported by** oath or affirmation</u>. And particularly describing the place to be searched, and the persons or **things** to be seized."*

Defendant Delgado also violated Plaintiff's Due Process Clause by falsifying an Official arrest report which is also known as Police Perjury. Plaintiff fully understands the implications of bringing this claim and meeting the three criteria for bringing a Fourteenth Amendment claim. As in, *Catron v. City of St. Petersburg*

City of Punta Gorda violated plaintiff's Fourteenth Amendment Right, Due Process clause by violating Plaintiff's Fifth Amendment Right. **Amendment V** *"No person shall be held to answer for a capitol, or otherwise infamous crime, unless on a presentment or indictment of a grand jury..."* Plaintiff is being held to answer for an infamous crime/felony without presentment or indictment of a grand jury.

To deny Plaintiffs Fourteenth Amendment Right would harmfully and unjustly abridge Plaintiffs' claims against Defendants City of Punta Gorda and Jose Delgado and Plaintiffs claim of First, Fourth, and Eighth Amendment Rights violations. *[see **Hurtado v California**, 110 US 516 (1884) The Fourteenth*

Amendment "embraced" those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions".  also see **Lawton v State** 731 SO. 2d. 60 (Fla. Dist. Ct. App. 1999) The state concedes the constitutional guarantee of substantive due process protects fundamental rights from government encroachment]

### Local_rule_3.01(g) Certification

Pursuant to Local Rule 3.01(g), Pro se litigant Hoffman conferred via telephone with Defendant in a good faith effort to resolve the issues raised in Defendants Motion. Plaintiff is unopposed to dismissing the writ of Quo Warranto, did the research and is now unopposed to dismissing the Malicious Prosecution claim, but otherwise opposed to the rest of the Constitutional violation claims.

---

[3]At the time of our Local Rule 3.01(g) conference Plaintiff was undecided about the Malicious Prosecution claim and the Eighth Amendment claim. Plaintiff reread Plaintiff's notes and confirmed this to be correct.

Respectfully submitted,

_/s/   Jerry L. Hoffman Jr._
Jerry L. Hoffman Jr.

Pro-Se litigant

18470 S.E. 18th Lane

Williston Fl. 32696

Telephone: (352)-339-4682

Email: ImCatchULater@gmail.com

### CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on 12 July 2023, I filed a true and correct copy of the

foregoing with the Clerk of the Court via U.S. Mail and by U.S. Mail email upon the

following participant:  Attorney for the Defendants Frank Mari,

(fmari@roperpa.com) and at Roper, P.A. 2707 East Jefferson St. Orlando, Fl. 32803

/S/  J L Hoffman  12 July 2023

Jerry L. Hoffman Jr. Pro-Se litigant

4580 words