UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MEYERS DIVISION

JERRY L. HOFFMAN, JR.,

    Plaintiff,

v.                                            Case No. 2:23-cv-130-SPC-NPM

JOSE DELGADO and
CITY OF PUNTA GORDA,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are several Motions filed by Defendants Jose Delgado and City of Punta Gorda: (a) Motion to Dismiss and Motion to Strike (Doc. 20), and (b) Motion to Stay Proceedings (Doc. 27). Pro se Plaintiff Jerry L. Hoffman, Jr. has responded to all motions. (Docs. 25, 31). For the below reasons, the Court grants the Motion to Dismiss and Motion to Strike (Doc. 20) and denies as moot the Motion to Stay (Doc. 27).

## BACKGROUND

As it must, the Court treats the factual allegations in the Amended Complaint (Doc. 5) as true and construes them in the light most favorable to Hoffman.[1] *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)

---

[1] Hoffman filed a Second Amended Complaint that the Court struck because it was filed with neither the Court's leave nor Defendants' consent. (Doc. 13). In so striking, the Court ordered

1

This civil rights action arises out of Hoffman's arrest in the lobby of the Punta Gorda Police Department. Hoffman considers himself a photojournalist. So, on July 28, 2022, he (and others) went to the Police Department "to question why no FOIA request had been responded to and to obtain complaint forms." (Doc. 5 at ¶ 8). To capture the interaction, Hoffman used "audio/video recording" from the moment he walked into the building. Hoffman requested service, and the officer at the "public's window" left without returning. About five minutes later, three officers—including Delgado—approached him with recording body cameras. Another officer confirmed that Hoffman was recording and told him to step outside the public lobby because it violated a City ordinance to video record inside any City building. Hoffman refused under the name of his constitutional right to free speech. A conflict ensued between Hoffman and Delgado. Hoffman was then arrested for assaulting a law enforcement officer, resisting arrest with violence, and trespass after warning.

Hoffman now sues the City and Delgado under 42 U.S.C. § 1983 for violating his First, Fourth, Eighth, and Fourteenth Amendment rights. (Docs. 1, 5). For their part, the City and Delgado move to dismiss the Amended

---

that the Amended Complaint (Doc. 5) was the operative pleading. (Doc. 13). Defendants then filed the Motions at issue.

Complaint under Federal Rule of Civil Procedure 12(b)(6), and to strike the demand for punitive damages. They also move to stay this action.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A formulaic recitation of the elements of a cause of action will not be enough. *Id.* "Factual allegations must be enough to raise a right above the speculative level[.]" *Id.* When considering a motion to dismiss, courts must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678.

Relevant here, pro se complaints are construed liberally and held to less stringent standards than formal pleadings that lawyers draft. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But the leniency has limits. Courts neither "serve as de facto counsel for a [pro se] party," nor "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168-69 (citation omitted); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th

Cir. 1989) (*pro se* litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").

## DISCUSSION

To prove a claim under § 1983, Hoffman must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law. *Brennan v. Thomas*, 780 F. App'x 813, 820 (11th Cir. 2019). The first element is at issue. As best the Court can tell, Hoffman brings these constitutional claims against the City and Delgado:[2]

- free speech and retaliation under the First Amendment
- false arrest and excessive force under the Fourth Amendment
- due process violations under the Fourteenth Amendment
- cruel and unusual punishment under the Eighth Amendment

(Doc. 5). The Court will address the plausibility of each claim as alleged in turn.

**1. First Amendment**

Hoffman generally argues that the prohibition on him recording in the Police Department is an impermissible restriction on his First Amendment rights. (Doc. 5). The prohibition comes from the City's Ordinance Chapter 15 Sections 15-48(d)-(e) that prohibits recording video or audio in City-owned,

---

[2] Hoffman also makes a malicious prosecution claim and demand for writ of Quo Warranto. But he does not oppose their dismissal. (Doc. 25 at 8). The Court thus dismisses Hoffman's malicious prosecution claim and denies him a writ of Quo Warranto.

controlled, and leased property without the consent of all people. Under the Ordinance, the Police Department is a limited public forum. *See* City of Punta Gorda Ordinance Chapter 15, Section 15-48(e). The designation means the City may regulate the time, place, and manner of speech if it uses content-based regulations that are viewpoint neutral. *Crowder v. Housing Auth. Of City of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993). But, according to Hoffman, the Ordinance is "strictly content oriented" and "overbroad." (Doc. 5 at ¶¶ 64, 65).

The Court need look no further than *Sheets v. City of Punta Gorda* to reject Hoffman's argument. 415 F. Supp. 3d 1115, 1122, 1128 (M.D. Fla. 2019). In *Sheets*, the Court found the same Ordinance viewpoint neutral, as it made no distinction based on any viewpoint of the individual recording, and the Court held the Ordinance was constitutionally permissible under the First Amendment. *Sheets*, 415 F. Supp. 3d at 1124. Although *Sheets* addressed restrictions with audio/video recording in public facilities like City Hall, the reasoning equally applies to recording in the Police Department. So Hoffman's recording in the Police Department was not activity protected under the First Amendment. The Court thus dismisses the free speech claims.

Hoffman also raises First Amendment retaliation claims. To state a claim for First Amendment retaliation under § 1983, a plaintiff generally must plead that: (1) the plaintiff engaged in constitutionally protected speech; (2)

5

the "defendant's retaliatory conduct adversely affected the protected speech"; and (3) the retaliatory action caused the adverse effect on plaintiff's speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). As discussed, Hoffman's recording in the Police Department was not activity protected under the First Amendment.

To the extent Hoffman argues that his arrest was in retaliation for exercising his First Amendment rights, the Supreme Court, in *Nieves*, held, "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). As will be analyzed in the next section, probable cause existed for Hoffman's arrest.

Because Hoffman's recording in the Police Department was not activity protected under the First Amendment, and because probable cause existed for Hoffman's arrest, there can be no First Amendment Retaliation claim. *Bennett*, 423 F.3d at 1250; *Nieves*, 139 S. Ct. at 1724. The Court thus dismisses any retaliation claim.

### 2. Fourth Amendment

Hoffman claims that Delgado violated his Fourth Amendment rights when he confiscated Hoffman's body worn camera without a warrant and when he battered, detained, and arrested Hoffman, "knowingly without justification and probable cause and based upon a false and fabricated justifications [*sic*] on

his official arrest report." (Doc. 5 at ¶ 50). Hoffman further asserts that Delgado "effected an unreasonable seizure and arrest of Plaintiff, and used excessive force doing same that caused Plaintiff permanent personal injury, emotional suffering, and other manner of damages." *Id.*

A person is seized under the Fourth Amendment when an officer, "by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California,* 551 U.S. 249, 254 (2007). A Fourth Amendment seizure requires an objective manifestation of "an intent to restrain." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021).

Addressing first Hoffman's false arrest claim, the existence of probable cause bars a § 1983 claim for false arrest. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). A law enforcement officer has probable cause to arrest a suspect when "a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." *District of Columbia v. Wesby,* 138 S.Ct. 577, 588 (2018); *see also Washington v. Howard,* 25 F.4th 891, 902 (11th Cir. 2022). In determining whether an officer had probable cause for an arrest, the Court looks to the events preceding the arrest "from the standpoint of an objectively reasonable police officer." *Wesby,* 138 S.Ct. at 586. Probable cause requires only "a probability" or "substantial chance of criminal activity, not an actual showing of such activity." *Id.*

7

The starting point here is the Ordinance being constitutional. *Sheets*, 415 F. Supp. 3d at 1124. From there, Hoffman makes several key admissions. He admits that he was recording inside the Police Department lobby. (Doc. 5 at ¶¶ 10-11). Hoffman also says that an officer directed him outside because he was illegally recording under the Ordinance. He then maintains he asked officers what would happen if he did not leave and if he would be arrested if he did not follow the officer's direction. (*Id*. at ¶¶ 14-19). Hoffman acknowledges that he was still recording in the lobby when he asked to speak with the Police Information Officer, and when Delgado entered the lobby. (*Id*. at ¶¶ 21-24). So, by Hoffman's own account, he violated the Ordinance and failed to comply with the Officers' commands.

During Delgado's attempt to arrest Hoffman, Hoffman admits saying, "Get off me cop!," "You're a piece of shit. You're a piece of garbage buddy" and admits, "while saying, 'Get off me man' . . . [he] quickly moves [his] own left elbow, with left hand still holding the camera phone, straight down and away from Defendant Delgado towards Plaintiff breaking the pain compliant hold Defendant Delgado ha[d] on Plaintiff's person." (Doc. 5 at ¶ 34). Hoffman therefore acknowledges resisting arrest. So, by Hoffman's own allegations, probable cause existed to arrest him for violating the Ordinance and for resisting arrest, in violation of Fla. Stat. § 843.01, resisting an officer with violence to his or her person, and Fla. Stat. § 843.02, resisting an officer

8

without violence to his or her person. Hoffman's false arrest claim will therefore be dismissed.

Turning to Hoffman's excessive force claim, Hoffman alleges that Delgado used excessive force when he:

- "shoved Plaintiff directly into a protruding wall corner where Plaintiff fell"

- "grabb[ed] Plaintiff's left wrist and attempt[ed] to drag Plaintiff towards the exit"

- put a "pain compliant hold on Plaintiff's left, bent elbow with Plaintiff's video recording phone in Plaintiff's left hand and pushe[d] Plaintiff towards the exit less than two feet away"

- struck "Plaintiff so hard the blow immediately shuts off Plaintiff's recording camera phone and the damaged camera goes flying into the wall"

    - grabbed "Plaintiff's left arm, again, swinging Plaintiff around and into a closed door and onto the floor"

    - "cruelly and unnecessarily lands on Plaintiff's back with a knee strike causing Plaintiff considerable agony and bodily damage to that area"

    - "grabb[ed] and twist[ed] Plaintiff's left wrist in a pain compliant hold"

9

- "switch[ed] knees and twist[ed] Plaintiff's left wrist viciously and unnecessarily, deliberately land[ing] a second knee strike ... to the back of Plaintiff's exposed neck, causing more bodily damage and severe pain"

- "pull[ed] viciously and forcefully on the handcuffs straight upwards and towards Plaintiff's face down head in order to inflict more abuse and pain, very nearly separating Plaintiff's shoulders out of the shoulder sockets."

(Doc. 5 at ¶¶ 26-40). After his arrest, Hoffman "went to the hospital for scans to determine any bones broken [*sic*], but no broken bones were found." (*Id.* at ¶ 45).

The Eleventh Circuit says "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). After all, "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof, and the typical arrest involves some force and injury." *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019). The key inquiry then is whether the officer's use of force was "objectively reasonable" under the circumstances. *Graham v. Connor,* 490 U.S. 386, 388, 397 (1989). The "reasonableness of a particular use of force" is judged

from the perspective of a reasonable officer on the scene, and not by the "20/20 vision of hindsight." *Id.* at 396.

Hoffman went to the hospital to get checked out and underwent "scans" to determine whether he had any broken bones. (Doc. 5. at ¶ 45). No broken bones were found. (*Id.*)  The Eleventh Circuit has held in similar situations that the force of which Hoffman complains was *de minimis* or otherwise did not violate the Fourth Amendment. *See., e.g., Nolin*, 207 F.3d at 1255 (holding that an officer grabbing the suspect and shoving him a few feet against a vehicle, pushing his knee into the suspect's back and the suspect's head against the vehicle was *de minimis* force); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that officer did not use excessive force when he "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him," noting that "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal"); *Jones v. City of Dothan,* 121 F.3d 1456, 1460-61 (11th Cir. 1997) (*de minimis* force when police slammed the suspect against the wall, kicked his legs apart and required him to raise his arms above his head as officers carried out arrest). Hoffman's Fourth Amendment excessive force claims will be dismissed.

11

### 3. Fourteenth Amendment Due Process Claims

Hoffman generally alleges that Delgado violated his Fourteenth Amendment Due Process rights through the violation of his Fourth Amendment rights when Delgado detained and arrested Hoffman and confiscated his body worn camera.[3] (Doc. 5 at ¶ 50).

When, as here, a plaintiff's Fourteenth Amendment claim is brought because of the alleged violation of another constitutional provision, the claim is analyzed under the standard related to the constitutional provision at issue, not under the Fourteenth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 883, 841 n. 5 (1998); *Graham*, 490 U.S. at 394. Hoffman's other constitutional claims have been analyzed above.

It is unclear if Hoffman makes procedural and substantive due process claims. Still, he falls far short of plausibly pleading either. As much as Hoffman brings a procedural due process claim, he must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Cantron v. City of St.*

---

[3] In responding to the Motion to Dismiss, Hoffman asserts that the City violated his Fourteenth Amendment Due Process rights by violating his Fifth Amendment rights. (Doc. 25 at 22). But the Amended Complaint only says, "This is an action for violation of Plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, to enjoy freedom of speech, to be secure in person and possessions, to be free from cruel and unusual punishment and excessive force." (Doc. 5 at ¶ 1). Because the Amended Complaint raises no Fifth Amendment claim, Hoffman cannot add it in his Response. Accordingly, a Fifth Amendment claim is not properly before the Court.

12

*Petersburg,* 658 F.3d 1260, 1266 (11th Cir. 2011). Here, he generally claims that Delgado committed "perjury in his official arrest report." (Doc. 5 at 47). But he neither offers facts on the process given to him nor allegations that any such process was constitutionally insufficient. And, as much as Hoffman's Due Process claim is based on his challenge of the Ordinance, this Court already held that the Ordinance is constitutionally permissible and does not deprive an individual of due process. *Sheets*, 415 F. Supp. 3d at 1122. The Court thus dismisses the Fourteenth Amendment claims.

  4. **Eighth Amendment Claims**

Although Hoffman alleges that Delgado violated his right to be free from cruel and unusual punishment, the Eighth Amendment applies only after a prisoner is convicted. *See Graham v. Connor*, 490 U.S. 386, 398 (1989); *United States v. Myers*, 972 F.2d 1566, 1571 (11th Cir. 1992). Because Hoffman's criminal case is still pending, he is not a convicted prisoner. Without that label, Delgado cannot have violated Hoffman's Eighth Amendment rights. The Eighth Amendment claims will be dismissed.

  5. **Municipal Liability Claims**

Finally, Hoffman seeks to impose § 1983 liability on the City for failing to supervise and discipline Delgado, "even after being so warned of repeated" complaints and concerns "as noticed by independent news source's videos of [Delgado's] improper action." (Doc. 5 at ¶ 57). *Respondeat superior* is not a

13

basis for the imposition of municipal liability under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978). For a municipality to face § 1983 liability, a plaintiff must allege facts showing: (1) his constitutional rights were violated; (2) the municipality had a custom, policy, or practice that constituted deliberate indifference to that constitutional right; and (3) the municipal custom, policy, or practice caused the constitutional violation. *Monell,* 436 U.S. at 691. The municipal custom, policy, or practice must be the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Isolated incidents do not create a custom, policy, or practice. *Depew v. City of St. Mary's*, 287 F.2d 1496, 1499 (11th Cir. 1986).

Although Hoffman alleges that Delgado "violated the rights of many people before Plaintiff" (Doc. 5, ¶ 63), this allegation is conclusory. Hoffman also argues that "the City was aware or should have been aware of the need to train officers, such as Delgado" but "lacked any policy or process to train officers, or even supervisors . . . and the lack of such training policy, process or program was inadequate to protect the rights of citizens." (Doc. 5 at ¶ 58, 59). These allegations are also unsupported and conclusory. Unsupported, conclusory allegations do not establish a custom, policy, or practice sufficient to support imposing municipal liability under *Monell* and cases applying it. Hoffman's municipal liability claims will be dismissed.

### 6. Punitive Damages

The City and Delgado also move to strike Hoffman's demand for punitive damages from the City, arguing they are unavailable against government entities under either § 1983 or Florida law. (Doc. 20 at 17-18). Although punitive damages may be awarded against municipal employees in their individual capacities, such damages may not be awarded against the municipalities. *City of Newport v. Fact Concerts Inc.,* 453 U.S. 247, 271 (1981). That is generally because municipalities are open to suit for failure to follow constitutional rights and federal law; so allowing punitive damages could create a serious risk to the financial integrity of these governmental entities. *Id.* Because punitive damages are unavailable against government entities, Hoffman cannot receive punitive damages from the City. The Court thus strikes Hoffman's demand for punitive damages.

### 7. Qualified Immunity

Delgado also moves for qualified immunity. Qualified immunity is a defense that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). Plaintiff has not stated a constitutional claim for which relief can be granted. Because there are

no underlying constitutional violations, the Court need not explore qualified immunity.

8. **Motion to Stay**

The City and Delgado also move to stay this case because of Hoffman's pending criminal charges and their intersection with his malicious prosecution claim here. (Doc. 27). But Hoffman concedes the dismissal of his malicious prosecution claim. Because of his concession, there is no need to stay this case because of the criminal charges. (Doc. 25 at 8). The Court thus denies as moot the Motion to Stay.

Accordingly, it is now **ORDERED:**

1. The Motion to Dismiss and Motion to Strike (Doc. 20) is **GRANTED**.
    a. The Amended Complaint (Doc. 5) is **DISMISSED with prejudice**.
2. The Motion to Stay Proceedings or, in the Alternative, Motion to Abstain and Dismiss Without Prejudice with Incorporated Memorandum of Law (Doc. 27) is **DENIED as moot**.

**DONE and ORDERED** in Fort Myers, Florida on September 21, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:   All parties of record